NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| ANGELA KNOX,                  ) | |
|           ) | |
|        Plaintiffs,     ) | |
|           ) | |
|      v.              ) | Civil Action No.: 08-4308 (JLL) |
|           ) | |
| SAMSUNG ELECTRONICS    ) | **OPINION** |
| AMERICA, INC.,          ) | |
|           ) | |
|        Defendants.    ) | |
|           ) | |

---

**LINARES, District Judge.**

This matter comes before the Court on the motions to consolidate [CM/ECF #7] and to dismiss [CM/ECF #12] filed by Defendant Samsung Electronics America, Inc. ("Samsung"). No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth herein, Samsung's motion to dismiss is granted in part and Samsung's motion to consolidate is granted in full.

**INTRODUCTION**

Plaintiff Angela Knox ("Plaintiff" or "Knox"), a resident of Georgia, purchased a Samsung laser printer, Model CLP-510, at Fry's Electronics in Duluth, Georgia. (Compl. ¶ 21.) Knox has on several occasions replaced the printer's toner cartridge when the machine has ceased printing and reported that the toner cartridge was empty. (Id. ¶ 24.) The replacement toner cartridges Knox has purchased were also acquired at Fry's Electronics in Georgia. (Id. ¶ 22.)

Knox alleges that Samsung printers, including her device, report that their toner cartridges are empty prior to the cartridge actually being exhausted.  (Id. ¶ 17.)  She also alleges that Samsung printers cease printing until a replacement cartridge is installed in the machine, despite useful toner remaining in the old cartridge.  (Id. ¶¶ 15, 17-18, 24.) Based on these facts, Knox filed her class action complaint in this District on August 26, 2008, alleging unjust enrichment, fraudulent concealment, trespass to chattels, conversion, and, finally, that Samsung violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2.

## DISCUSSION

### A.      Motion to Dismiss

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.[1]  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.  See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

---

[1] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Id. Ultimately, however, the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims. Scheuer, 416 U.S. at 236. With this framework in mind, the Court turns now to Defendant's motion.

## 1.     New Jersey Consumer Fraud Act

The parties' sharpest disagreement concerns the applicability of the NJCFA. Samsung contends that Knox cannot sue under the NJCFA because this Court should find that Georgia's law applies, or, alternatively, that Knox has not pled a claim under the NJCFA. (Def. Br. at 9, 13-16.) Knox, on the other hand, asserts that New Jersey law governs, that she has pled a claim, and that she will not pursue a claim under the Georgia Fair Business Practices Act if this Court holds that Georgia law applies. (Pl. Opp. Br. at 8, n.2, 19-25.)

New Jersey applies a flexible governmental-interest analysis as its choice of law rule. Erny v. Estate of Merola, 792 A.2d 1208, 1212-13 (N.J. 2002). The choice of law determination in New Jersey is not global, and operates on an issue-by-issue basis. Erny, 792 A.2d at 1213. New Jersey's governmental interest analysis requires this Court to determine whether a conflict exists, and if a conflict exists, "identify the governmental

3

policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." Heindel v. Pfizer, Inc., 381 F. Supp 2d 364, 370-71, 374 (D.N.J. 2004) (quoting D'Agostino v. Johnson & Johnson, Inc., 628 A.2d 305, 309 (N. J. 1993). See also Veazey v. Doremus, 510 A.2d 1187, 1189 (N.J. 1986). Forum law applies in the absence of a conflict. Elias v. Ungar's Food Prods., Inc., 252 F.R.D. 233, 246 (D.N.J. 2008).

As a preliminary matter, this Court finds that a conflict exists between Georgia's Fair Business Practices Act and the NJCFA. Georgia's law, unlike New Jersey's, forbids class actions and requires proof of reliance—significant limitations on the rights of individuals to recover not present in New Jersey law. Honig v. Comcast of Ga. I, LLC, 537 F. Supp 2d 1277, 1289 (N.D. Ga. 2008); Agnew v. Great Atl. & Pac. Tea Co., 502 S.E.2d 735, 736 (Ga. Ct. App. 1998).

Plaintiff argues that a series of New Jersey federal and state cases have held that the NJCFA was intended to protect out-of-state consumers such as herself. (Pl. Opp. Br. at 8.) This Court finds those cases distinguishable.

Elias v. Ungar's Food Products, Inc. found that as New Jersey's law provided greater protections for consumers, its law would apply where essentially all of the defendant's business operations, including design, manufacture, and marketing were located in New Jersey. 252 F.R.D. 233, 247-48 (D.N.J. 2008) (analysis in adopted report and recommendation). The alleged fraudulent conduct in Elias concerned food products that were labeled with lower fat and calorie amounts than could be confirmed in independent testing. Elias, 252 F.R.D. at 240-41. The Elias opinion was delivered at the class certification stage, however, where New Jersey consumers were at issue. Id. at 240.

4

When New Jersey consumers are actually at issue, New Jersey's contacts are qualitatively different than in cases such as this, where the only named Plaintiff is a Georgia resident and no New Jersey consumers are currently before the Court.  In Elias, New Jersey law was viewed as not providing a lower level of consumer protection than the laws of other states where putative class members existed in several states.  Id. at 247. New Jersey may still have an interest in preventing New Jersey corporations, such as Samsung, from violating the NJCPA, but such an interest is attenuated here by the absence of a New Jersey consumer in the instant motion.

The analysis in Dal Ponte v. American Mortgage Exp. Corp. is of a piece with that in Elias.  No. 04-2152, 2006 WL 2403982, at *6-7 (D.N.J. Aug. 17, 2006).  Dal Ponte recognizes, in the context of class certification, that each state has an interest in applying its own law to its own consumers.  No. 04-2152, 2006 WL 2403982, at *6.  The Court found that New Jersey law was at least as protective of consumers as the laws of other states, and also that the defendant's alleged fraud was entirely generated in New Jersey.  Id. at *6-7.  Based on these contacts, which included New Jersey consumers, Dal Ponte held that New Jersey choice of law would govern with respect to class NJCFA claims.

New Jersey's Appellate Division has also found, in class action choice of law analyses, that the NJCFA applies instead of the laws of other states.  International Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 894 A.2d 1136, 1146-54 (N.J. Super. Ct. App. Div. 2006), overruled on other grounds, 929 A.2d 1076 (N.J. 2007).  In International Union, the Appellate Division conducted an exhaustive analysis of the contacts in a class certification motion, and decided, in part based upon the

5

defendant's pervasive contacts with New Jersey, and where the "ultimate decision-making power" rested in New Jersey, that the NJCFA would govern a nationwide class. 894 A.2d at 1148-49.

There is also at least one federal case in New Jersey applying the NJCFA in a choice of law analysis conducted at the motion to dismiss stage.  Boyes v. Greenwich Boat Works, Inc., 27 F. Supp 2d 543, 546-48 (D.N.J. 1998).  Boyes applied the NJCFA to a boat sale transaction by a New Jersey seller to an out-of-state resident, where certain representations and final delivery occurred outside New Jersey.  27 F. Supp 2d at 545-47.

Several cases also exist that refuse to apply the NJCFA after conducting a choice of law analysis.  Notably, in Fink v. Ricoh Corp., the New Jersey Superior Court found that the situs of the fraud mattered when deciding choice of law in a case involving a New Jersey corporation:

> In this case precious little evidence has been tendered as to the involvement of Ricoh's corporate headquarters in the marketing campaign for the RDC-1 camera other than that its principal place of business is located in West Caldwell, New Jersey and that Ricoh probably authorized the use of its corporate logo on Ricoh's advertising brochures; but there is nothing in Lengyel's deposition to suggest that this was done specifically for the RDC-1 camera, but rather constituted a generally authorized use of the logo in the marketing of Ricoh's consumer products. Clearly, no evidence exists in this case, as there was in Boyes, that the allegedly false representatives were made to plaintiffs in New Jersey by any Ricoh officer or employee.

839 A.2d 942, 989 (N.J. Super. Ct. Law Div. July 31, 2003).  Federal Courts in New Jersey have also found, contrary to the logic of Elias and Dal Ponte, that "[e]ach plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens

6

under its own laws." In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174

F.R.D. 332, 348 (D.N.J. 1997).  With respect to this Defendant, this Court has also

previously found that the NJCFA will not apply under a choice of law analysis where the

only plaintiff was an Arizona consumer having purchased a television in Arizona from an

Arizona retailer, and the contacts in New Jersey were limited to "the location of

Samsung's headquarters, and substantial decision-making, marketing, and distribution

efforts." Cooper v. Samsung Elecs. Am., Inc., No. 07-3853, 2008 WL 4513924, at *5

(D.N.J. Sept. 30, 2008) (Linares, J.).

   This Court finds the cases applying the NJCFA in class action contexts generally

distinguishable.  As noted supra, those cases involve class actions in which New Jersey

plaintiffs are before the court if not as named plaintiffs, then at least as putative class

members.  Here, this Court has been presented with a Georgia plaintiff seeking recovery

against a New Jersey corporation on a series of transactions carried out in Georgia.

(Compl. ¶¶ 4, 21-22.)  In cases where New Jersey has its own residents' interests at stake,

its consumer protection policy has a greater significance than when New Jersey residents

are not involved.  Although it is true that New Jersey seeks to prevent its corporations

from defrauding out-of-state consumers, it is not clear to this Court that New Jersey

intended out-of-state consumers to engage in end runs around local law in order to avail

themselves of collective and class remedies that those states deny.  See In re Ford Motor

Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. at 348;  Honig, 537 F. Supp 2d at

1289.

   Additionally, this Court finds Boyes unpersuasive.  In Boyes, the New Jersey

defendant conducted significant parts of the boat sale transaction in New Jersey; the

seller met with the buyer in New Jersey, repeated allegedly false claims at a place of business in New Jersey, and the buyer signed the purchase order in New Jersey.  27 F. Supp 2d at 545.  None of those contacts occurred in New Jersey in this case.  While Plaintiff alleges in her Complaint that Samsung committed the fraud, and Samsung is incorporated and acts in New Jersey, the consumer contacts all in this matter all occurred in Georgia.  Furthermore, this Court does not have allegations as specific as those in Elias before it; the Complaint is not specific about the place of manufacture or design of the printers, and this Court is loath to assume facts outside of the Complaint in deciding a motion to dismiss.  At the present stage of this case, therefore, this Court finds that Georgia is the state with the greatest interest in applying its law, and Georgia law will apply to the consumer fraud claim.  As Plaintiff states that she will not proceed under the Georgia law equivalent to the NJCFA, the NJCFA count of the Complaint is dismissed with prejudice.

### 2.    Unjust Enrichment

In the instant motion, Samsung argues that Knox's unjust enrichment claim should be dismissed under the law of Georgia or the law of New Jersey because Knox conferred no benefit on Samsung.  (Def. Br. at 17-18.)  Plaintiff does not oppose Samsung's argument in her opposition.

Both Georgia and New Jersey law require that a plaintiff confer a benefit on the defendant.  Adamson v. Ortho-McNeil Pharm., Inc., 463 F. Supp 2d 496, 505 (D.N.J. 2006); Smith v. McClung, 452 S.E.2d 229, 232 (Ga. Ct. App. 1994).  Knox pleads in her Complaint that some of the money she spent on Samsung products was "returned back to Samsung through the chain of commerce."  (Compl. ¶ 23.)  Both New Jersey and

8

Georgia, however, require the direct conveyance of a benefit in order to support an unjust enrichment claim. Eli Lilly and Co. v. Roussel Corp., 23 F. Supp 2d 460, 496 (D.N.J. 1998); Scott v. Mamari Corp., 530 S.E.2d 208, 212 (Ga. Ct. App. 2000). In the absence of a direct commercial relationship between Plaintiff and Defendant, this Court dismisses Plaintiff's unjust enrichment claim.

### 3.    Fraudulent Concealment

With respect to Knox's fraudulent concealment claim, Samsung urges dismissal because Knox has not met the pleading standards of Rule 9(b) and because Samsung's User Guide for Knox's printer set forth an estimated page yield for the printer. (Def. Br. at 19-20.) In its reply brief, Samsung also asserts that the Complaint fails to allege that Knox relied on any misrepresentation by Samsung. (Def. Reply. Br. at 6.) Knox claims that her Complaint complies with Rule 9(b) and that her theory of fraudulent concealment is not rebutted by Samsung's average yield argument. (Pl. Opp. Br. 26, 31.) As both Knox and Samsung agree that there is no conflict between New Jersey and Georgia law regarding the issues presently before this Court in the law of fraudulent concealment, this Court will apply New Jersey law. Elias, 252 F.R.D. at 246; Pl. Opp. Br. at 29 n.10; Def. Reply Br. at 6 n.4.

In order to plead fraudulent concealment in New Jersey, a plaintiff must plead five elements: "1) a material misrepresentation of a presently existing or past fact; 2) knowledge of the falsity by the person making the misrepresentation; 3) intent that the misrepresentation will be relied upon; 4) reliance on the misrepresentation; and 5) resulting damages." Horton v. Ross Univ. School of Med., No. 04-5658, 2006 WL 1128705, *9 (D.N.J. 2006). Fraudulent concealment must be pled under the heightened

standards of Federal Rule of Civil Procedure 9(b).  Byrnes v. DeBolt Transfer, Inc., 741

F.2d 620, 626 (3d Cir. 1984).  The Third Circuit has set forth the following requirements

for pleading fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with
> particularity "the 'circumstances' of the alleged fraud in
> order to place the defendants on notice of the precise
> misconduct with which they are charged, and to safeguard
> defendants against spurious charges of immoral and
> fraudulent behavior." Seville Indus. Mach. Corp. v.
> Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).
> Plaintiffs may satisfy this requirement by pleading the
> "date, place or time" of the fraud, or through "alternative
> means of injecting precision and some measure of
> substantiation into their allegations of fraud." Id.

Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004).

First, this Court is satisfied that Knox has pled fraudulent concealment under Rule

9(b).  Contrary to Defendant's contention, Plaintiff has identified the "precise material

facts allegedly withheld."  (Def. Br. at 20.)  The Complaint contains sufficient detail

concerning the behavior of the printer: the machine reported that toner cartridges were

empty when Plaintiff asserts that they were not empty and could still be used.  (Compl. ¶

24.)  The material facts in Knox's Complaint are whether the toner cartridge was, indeed,

empty, and whether the printer falsely reported that it was empty.  Thus, Knox has

injected her Complaint with sufficient specificity that Samsung should be able to prepare

a defense to specific conduct, and this Court declines to find that Knox's fraudulent

concealment claim should be dismissed for failure to comply with Rule 9(b).  Lum, 361

F.3d at 223-24.

Samsung's second argument for dismissal of the fraudulent concealment claim is

that because Samsung disclosed the estimated page yields of toner cartridges in the

printer's User Manual, it did not conceal anything.  (Def. Br. at 21.)  Plaintiffs

distinguish Samsung's argument as inconsistent with the User Manual and the behavior

of the printer.  (Pl. Opp. Br. at 26-28.)

The User Manual, referred to in both the Complaint and the parties' briefs,

provides a table giving the number of pages a consumer can expect from a given toner

cartridge.  (Assuncao Cert. Ex. A at 6.3.)  The table is prefaced by the following

statement: "[f]rom time to time, you may need to replace the following items to maintain

top performance and to avoid print quality problems."  (Id.)  The next page of the manual

explains, "[t]he life of a toner cartridge depends on the amount of toner that your print

job requires."  (Id. at 6.3.)  The manual also describes what to do if the printer indicates

that the toner cartridge needs replacement.  "When the display on the control panel shows

the error message, '[Color] Toner Empty,' the printer stops printing.  At this stage,

replace a toner cartridge."  (Id. at 6.8.)

Samsung asserts that the printer is operating according to the User Manual when

it ceases printing after hitting the "specified page yield," despite the fact that Samsung

provides additional toner that the user cannot access.  (Def. Reply Br. at 7, 8.)  In support

of its position, Samsung points to caselaw on the issue of whether a representation was

fraudulent.  The instant case, however, is distinguishable from the cases upon which

Samsung relies.  The Plaintiff here did not fail to read a document that disclosed the

purported misrepresentation.  Delaney v. American Express Co., No. 06-5134, 2007 WL

1420766, at *6 (D.N.J. May 11, 2007) (finding that annuity agreement set forth

disparities in annuity yield); General Motors Corp. v. Green, 325 S.E.2d 794, 795-96

(Ga. Ct. App. 1984) (finding that car warranty disclosed defects).  Instead, the User

11

Manual states that the printer will report a toner cartridge to be empty and that the

cartridge must be replaced.  Plaintiff's theory of liability is that Samsung concealed from

the consumer that the cartridge was not empty, and that in the "razor-and-blades"

business model Samsung employed, it was detrimental to consumers for that information

to be concealed.  This Court, at the motion to dismiss stage, agrees with Plaintiff that

Samsung's representation could have been materially misleading: the manual—and the

printer's display—uses the term "empty."  If the cartridge is not empty, than the

representation to the consumer could be materially misleading.

The parties also disagree on the application of two recent federal cases to the

issue of whether the User Manual and printer error messages are materially misleading.

Schorsch v. Hewlett-Packard Co., 417 F.3d 748 (7th Cir. 2005), addressed the issue of

removal under the then-new Class Action Fairness Act, and included the following

paragraph musing on the fate of the plaintiff's claim:

> This may mean that plaintiffs lose (and quickly) across the
> board: no rule of law requires drum kits or toner cartridges
> or any other consumer product to last for any prescribed
> period.  If it would be lawful in Illinois for HP to fill
> cartridges with enough toner to last (on average) 3,000
> pages, why would it not be lawful to include more toner
> (enough to ensure 3,000 pages of use) and then require
> replacement at that point, before the streaking and spotty
> output that marks the end of a cartridge's supply of toner?
> Consumers are better off with the second kind of cartridge
> than with the first.  Much the same may be said for ink
> cartridges and drum kits.  If HP had promised that its toner
> cartridges would last for 3,500 pages, then used an
> EEPROM to shut them down after 3,000, Schorsch would
> have a better claim, but this does not appear to be the
> class's theory.  Yet it is not our job to resolve the case on
> the merits; all we need do is observe that the second
> amended complaint concerns the same "transaction" as a
> matter of Illinois law.

Schorsch, 417 F.3d at 751 (Easterbrook, J.) (emphasis in original).  Although Schorsch

succinctly states Defendant's main contentions concerning the legality of shutting off the

printer, as the opinion itself notes, it is dicta.  Id.  As the Seventh Circuit did not need to

reach the issues under the substantive law of Illinois, Schorsch's insightful statements on

printer design do not offer much guidance on the issue of material misrepresentation, and

this Court declines to apply the case as persuasive authority.

        The other case the parties discuss in detail is Baggett v. Hewlett-Packard Co.  582

F. Supp 2d 1261 (C.D. Cal. 2007).  Baggett is factually similar to this case: the printers in

that case indicated by means of a flashing light that a toner cartridge was empty, and the

plaintiff alleged that the cartridges were, in fact, not empty.  582 F. Supp 2d at 1264.  In

analyzing a fraudulent concealment claim under California law, Baggett found that the

complaint at issue in that case stated a claim because the complaint alleged that

defendants knew that the toner cartridges were not empty, and concealed that fact from

consumers.  Id. at 1268.

        This Court finds the analysis in Baggett persuasive.  Samsung challenges Knox's

allegation of the falsity of its representation, and this Court finds that Knox's allegations,

like those in Baggett, state a claim for a material misrepresentation at the motion to

dismiss stage.  Id. at 1267-68; Def. Br. at 21.  Baggett rejected the defendant's average

number of pages theory of cartridge life as not within the reasonable expectation of a

consumer, who, according to that court, would expect to receive the entire benefit of a

purchased toner cartridge.  582 F. Supp 2d at 1267.  This Court need not go so far; on the

instant motion, it is only necessary to find that the misrepresentation alleged here could

suffice as a material misrepresentation for fraudulent concealment.  This Court finds that

Knox has successfully alleged a material misrepresentation by Samsung on the issue of the toner cartridges' emptiness, and so denies Samsung's motion to dismiss the fraudulent concealment count of the Complaint.

### 4.    Trespass to Chattels

Samsung argues that this Court should dismiss Knox's trespass to chattels claim for failure to allege damage to or interference with any personal property if Georgia law applies.  (Def. Br. at 21.)  If New Jersey law applies, Samsung urges that this Court dismiss the trespass to chattels claim for Knox's inability to allege that Samsung had any contact with the printer or the cartridge once they were in Knox's possession.  (Id. at 22.) Knox, in her opposition brief, argues that there is no conflict between the law of Georgia and New Jersey with respect to trespass to chattels, but maintains that under the law of either state that Samsung engaged in wrongful interference with the use of a consumer's toner by programming the printer to shut off before a cartridge was empty but report the cartridge to the consumer as being empty.  (Pl. Opp. Br. at 32-36.)

Georgia defines the tort of trespass to personal property by statute: "[a]ny unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered."  O.C.G.A. § 51-10-3.  In examining a conversion claim, the Supreme Court of Georgia indicated that it accepted the proposition that trespass to personal property "will doubtless lie for acts of interference with goods while trover will not."  Maryland Cas. Ins. Co. v. Welchel, 356 S.E.2d 877, 879 (Ga. 1987) (quoting 28 EGL 79, Trover & Conversion, § 2 (1985 Rev.)).  "The unauthorized interference with, or damage to, the personalty of another is a trespass." MCI Worldcom Network Servs., Inc. v. Von Behren Elec., Inc., No. 00-3311, 2002 WL

14

32166535, at \*6 (N.D. Ga. May 21, 2002) (emphasis in original) (finding damage to a chattel violates Georgia trespass to personal property law).

Some previous decisions of New Jersey Supreme Court have intimated that the tort of trespass to chattels is recognized under New Jersey state law.  Mueller v. Technical Devices Corp., 84 A.2d 620, 623 (N.J. 1952) (quoting Frome v. Dennis, 45 N.J.L. 515 (N.J. 1883) for the proposition that a lesser interference than a conversion would constitute a trespass to chattels).  The parties discuss the Restatement (Second) of Torts §§ 217 and 218 with respect to the New Jersey law of trespass to chattels, but this Court is unable to uncover a New Jersey decision adopting the Restatement approach.[2]

Assuming arguendo that New Jersey recognizes the tort of trespass to chattels via the Restatement, this Court finds that there is no conflict between the two states on the issue before the Court at this time.  Georgia law recognizes liability from interference with a chattel in addition to damage to a chattel.  MCI Worldcom Network Servs., Inc., No. 00-3311, 2002 WL 32166535, at \*6.  The Restatement, similarly, does not limit itself expressly to damage to chattels: "[a] trespass to a chattel may be committed by intentionally . . . intermeddling with a chattel in the possession of another."  Restatement (Second) of Torts § 217 (1965).

With respect to the issue of "intermeddling," which Samsung maintains requires physical contact between the tortfeasor and the chattel for liability to exist, this Court

---

[2]The leading case in New Jersey discussing the Restatement approach on trespass to chattels is a case in this District applying federal maritime tort law.  Great Am. Ins. Co. v. Nicholas, No. 88-3555, 1989 WL 125350 (D.N.J. Oct. 3, 1989).  As a case applying federal, rather than New Jersey law, this Court finds that Great American Insurance Co. is not of significant value in predicting the New Jersey Supreme Court's torts jurisprudence.  Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007).

declines to read such a requirement into the Restatement.  (Def. Br. at 22.)  California

law, as discussed in the factually similar case of <u>Baggett</u>, recognizes that "automated

systems" can supply the requisite interference with a chattel in a claim of trespass to

chattels.  582 F. Supp 2d at 1269; <u>eBay, Inc. v. Bidder's Edge, Inc.</u>, 100 F. Supp 2d 1058,

1070-71 (N.D. Cal. 2000) (finding that programmed queries can interfere with the

operation of another's computer system).  The comments to the Restatement disputed by

the parties also do not indicate that direct action is required by an individual to commit

the tort.  Comment (d) to § 217 of the Restatement dispenses with a direct action

requirement: "the rule stated in this Section is applicable irrespective of whether the

intermeddling was the direct or indirect result of an act done by the actor, provided that

his misconduct was the legal cause of the harm."  Restatement (Second) of Torts § 217

(1965) cmt. d.  The following comment expands on the term "intermeddling:"

> e. Physical contact with chattel. "Intermeddling" means
> intentionally bringing about a physical contact with the
> chattel. The actor may commit a trespass by an act which
> brings him into an intended physical contact with a chattel
> in the possession of another, as when he beats another's
> horse or dog, or by intentionally directing an object or
> missile against it, as when the actor throws a stone at
> another's automobile or intentionally drives his own car
> against it. So too, a trespass may be committed by causing
> a third person through duress or fraud to intermeddle with
> another's chattel. An actor may also commit a trespass by
> so acting upon a chattel as intentionally to cause it to come
> in contact with some other object, as when a herd of sheep
> is deliberately driven or frightened down a declivity. If
> such intermeddling with another's chattel is done without
> his consent and without any other privilege, the actor is
> subject to liability for harm thus caused to the chattel under
> the rules stated in §§ 218-220.

Id. at cmt. e.  Samsung reads Comment (e) as requiring presence and physical contact

with a chattel.  (Def. Br. at 22.)  Reading Comment (e) in conjunction with Comment (d),

which permits indirect action, this Court finds that programming a printer to stop printing

prior to exhausting a toner cartridge is analogous to "intentionally directing an object or

missile against it" or enlisting a third person to act, in that such an action interferes with

an individual's interest in the toner cartridge.  See Baggett, 582 F. Supp 2d at 1270

("Here, HP allegedly programmed the printer to stop printing when the ink cartridges

were not empty, and thus to deprive Plaintiff of his remaining ink.").  This Court,

therefore, denies Defendant's motion to dismiss Plaintiff's trespass to chattels claim.

### 5.     Conversion

Samsung contends that Knox's conversion claim should be dismissed for failure

to plead deprivation of title, possession of property by Samsung, or any demand for

return by Knox, as required under Georgia law.  (Def. Br. at 23.)  If New Jersey law

applies, Samsung urges dismissal for Knox's failure to sufficiently plead facts to back up

a claim of Samsung's dominion and control of her property.  (Def. Br. at 24.)  Knox

argues that she has stated a claim for conversion because she is not required to plead a

demand for return of her property, and that Samsung's interference with her ability to

utilize the inaccessible toner in her cartridges supplies sufficient interference with her

property to constitute conversion.  (Pl. Opp. Br. at 37-40.)

Under New Jersey law, conversion is "an unauthorized assumption and exercise

of the right of ownership over goods or personal chattels belonging to another, to the

alteration of their condition or the exclusion of an owner's rights."  LaPlace v. Briere,

962 A.2d 1139, 1144-45 (N.J. Super. Ct. App. Div. 2009) (quoting Barco Auto Leasing

<u>Corp. v. Holt</u>, 548 A.2d 1161, 1164-65 (N.J. Super. Ct. App. Div. 1988)).  "The theory behind conversion is that the actor has exerted such a major and serious interference with the plaintiff's rights to the chattel that in essence the law will force a judicial sale of the chattel upon the defendant."  <u>LaPlace</u>, 962 A.2d at 1145.  New Jersey law requires an interference with goods such that the goods are destroyed or their quality is changed. <u>Frome v. Dennis</u>, 45 N.J.L. 515 (N.J. 1883).

A Georgia statute, O.C.G.A. § 51-10-1, defines conversion as follows: "[t]he owner of personalty is entitled to its possession.  Any deprivation of such possession is a tort for which an action lies."  <u>See</u> <u>Grant v. Newsome</u>, 411 S.E.2d 796, 797 (Ga. Ct. App. 1991) ("This statute embodies the common law action of trover and conversion.").  Georgia law broadly recognizes that "technically it is not necessary that the defendant assert any right of ownership over the property; it is sufficient if the defendant wrongfully assumes dominion over the property inconsistent with the owner's right." <u>Maryland Cas. Ins. Co.</u>, 356 S.E.2d 877, 880 (Ga. 1987).  Courts in Georgia, however, generally require the proof of one of two theories in a conversion action.  If the defendant has lawfully come into possession of the plaintiff's property, the plaintiff must demand its return and be refused.  <u>Williams v. National Auto Sales, Inc.</u>, 651 S.E.2d 194, 196 (Ga. Ct. App. 2007).  The second theory "requires only that the defendant, who comes into possession of the property unlawfully, disposes of the property without authority and retains the proceeds."  <u>Williams</u>, 651 S.E.2d at 197.  These two theories of conversion both require the defendant to have obtained the property or the proceeds from the property.  <u>Wallace v. Mallory</u>, 43 S.E. 424, 424 (Ga. 1903); <u>Blakely v. Victory</u>

18

Equipment Sales, Inc., 576 S.E.2d 288, 292 (Ga. Ct. App. 2002) (requiring defendants to have put property to their own use).

The parties, in their briefs, decline to reach the choice of law issue with respect to whether the law of New Jersey of Georgia controls. This Court finds, with respect to the law of the two states here, there is no conflict presented. Knox alleges that Samsung, by operation of its printer, shut off her access to valuable toner remaining in the toner cartridge. (Compl. ¶¶ 24-25.) Under the law of New Jersey, this interruption of Knox's access to the toner cartridge could constitute a substantial enough change in the quality of the toner cartridge as to constitute conversion. Frome, 45 N.J.L. at 515; LaPlace, 962 A.2d at 1144-45. Under Georgia law, Knox has alleged that Samsung, through its printer, shut off access to the remaining toner in the toner cartridge she had title to; and that Samsung obtained the value of the remaining toner by requiring that Knox purchase and install a new Samsung toner cartridge in order to continue printing. Wallace, 43 S.E. at 424; Williams, 651 S.E.2d at 197; Blakely, 576 S.E.2d at 292; Compl. ¶¶ 24-25. Although Plaintiff's conversion theory may be somewhat novel, given the facts she has alleged and the present posture of this case, upon which this Court accepts the facts alleged in the Complaint as true, this Court declines to grant Defendant's motion to dismiss the conversion claim at this time.

**B.     Motion to Consolidate**

Samsung moves to consolidate this action, for pretrial purposes only, with another action pending in this District: Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc., Docket #08-5380. Plaintiff does not oppose Samsung's motion.

Federal Rule of Civil Procedure 42 permits consolidation of cases where common issues of law and fact exist.  Fed. R. Civ. P. 42(a)(2).  Local Civil Rule 42.1 allows for consolidation of cases into the earliest filed action.  This Court finds that even though the motion to dismiss in Knox has now been decided, the two cases are similar enough for consolidation to serve the interests of judicial efficiency, prevent duplicative motion practice, and avoid conflicting decisions of law on the same facts.  Both actions are class actions against Samsung based on Samsung's printers foreclosing access to unspent toner in toner cartridges; the difference between them is primarily that Warma Witter Kreisler seeks to certify a smaller class only under the theories of certain specified state consumer fraud acts and unjust enrichment.  Given that the factual issues are nearly identical, and that this Court has already familiarized itself with the legal issues framed in Warma Witter Kreisler, Defendant's motion to consolidate is granted.

## CONCLUSION

For the reasons heretofore given, Defendant's motion to dismiss is granted in part and denied in part, and the motion to consolidate is granted.  An appropriate Order accompanies this Opinion.

DATED: June 24, 2009                         /s/ Jose L. Linares
                                              United States District Judge